C. F. TRANTOW COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 7—December 2, 1952.*

For the appellants there was a brief by *Grelle & Schlotthauer,* and oral argument by *John F. Jenswold,* all of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Margaret Suhr there was oral argument by *Donald E. Reiland* of Wisconsin Rapids.

FAIRCHILD, J. The court below was convinced that the commission acted within its jurisdiction in entering the order of September 5, 1950. The decision, as far as the jurisdictional question is concerned, follows the statutes. Sec. 102.16 (1), Stats. 1949, provides:

"Any controversy concerning compensation, including any in which the state may be a party, shall be submitted to said commission in the manner and with the effect provided in this chapter. Every compromise of any claim for compensation may be reviewed and set aside, modified, or confirmed by the commission within one year from the date such compromise is filed with the commission, or from the date an award has been entered, based thereon, or the commission

may take such action upon application made within such year. Unless the word 'compromise' appears in a stipulation of settlement, the settlement shall not be deemed a compromise, and further claim shall not be barred except as provided in section 102.17 (4) irrespective of whether award is made."

Under the express provisions of the section just quoted, the word "compromise" is an important declaration serving to advise the commission and all concerned of the comprehensiveness of the stipulation. By using the word "compromise" we usually mean that we assume the risk of a mistake for which otherwise one would be entitled to a different result. Under the statute, when the word "compromise" is indelibly stamped upon the stipulation, there is an extension of protection against disadvantage to the extent of a possible review and change if such action is taken within the year. On the other hand, if that word is not used in the stipulation, the statute provides for the longer term of the six-year limitation period. As suggested by the attorney general, this subsection was considered in *Wacker v. Industrial Comm.* (1946), 248 Wis. 315, 21 N. W. (2d) 715. In that case, an award based upon a stipulation not containing the word "compromise," the employer-insurance carrier filed application to set aside the stipulation of facts and the award. The commission entered such an order. The circuit court confirmed the commission's order setting aside the previous findings and order, but on appeal to this court, the judgment was reversed on the ground that the commission had no jurisdiction to set aside its order upon the application of the employer and his insurance carrier. It was there said, page 321: "Their claim is not a claim within the meaning of the 1943 amendment to sec. 102.16 (1), or within the meaning of sub. (4) of sec. 102.17." The court noted, page 319, that it was not concerned "with the right and claim of an employee for compensation" and pointed out that the 1943 amendment referred to two classes of stipulation

of settlement, "those in which the word 'compromise' appears and those in which the word does not appear. If the word 'compromise' appears in the stipulation of settlement, the commission's award on the stipulation is an award on a genuine compromise and is subject to the one-year limitation for commission action on compromises." See *Metropolitan Casualty Ins. Co. v. Industrial Comm.* (1951), 260 Wis. 298, 302–308, 50 N. W. (2d) 399, where it was held that payment and release did not constitute "compromise" under the 1927 statutes.

The appellants suggest with reference to the *Wacker Case, supra,* that:

"The rule as urged by the attorney general and as based upon his interpretation of the *Wacker Case* would seem to result in a double standard applicable to the various parties; the employer would find an order confirming the stipulation final in twenty days but the employee and the Industrial Commission would be free to appeal from it at any time within six years. This proposition is without any foundation of authority, and, as a matter of fact, it directly opposed the principles of uniform justice as originally set forth in the constitution of the United States and adhered to in principle and practice by the constitution of the state of Wisconsin and the statutes of this state."

The question of the constitutionality of the statute was not timely raised and has not been argued by the attorney general. It was not considered below and is not before us on this appeal. In *Baker v. Leenhouts* (1950), 257 Wis. 584, 44 N. W. (2d) 544, in accord with the rule that "the constitutionality of a statute cannot be raised for the first time in an appellate court of a state or upon a rehearing in a civil case" (11 Am. Jur., Constitutional Law, p. 772, sec. 125), we quoted from *Booth Fisheries Co. v. Industrial Comm.* cited below, which held that (p. 588):

"It is well settled that constitutional rights, as well as any other personal or property right, may be waived."

*Booth Fisheries Co. v. Industrial Comm.* (1924), 185
Wis. 127, 132, 200 N. W. 775; *Hayes v. Hoffman* (1927),
192 Wis. 63, 70, 211 N. W. 271; *State v. Retail Gasoline
Dealers Asso.* (1950), 256 Wis. 537, 41 N. W. (2d) 637.
We reserve any ruling on the question of the constitutionality
of this statute.

Another case relied upon by the appellants, *Boehmke v.
Industrial Comm.* (1948), 253 Wis. 610, 34 N. W. (2d)
774, is distinguishable from the case at bar. That case
brought to the court a second application for additional com-
pensation. Eventually a determination must become final
under the proceedings provided for the review of an award
on stipulation. In the *Boehmke Case,* an examiner had en-
tered an award on June 27, 1945, on a stipulation in which
the word "compromise" did not appear. Forty-one days later,
June 16, 1945, a petition for review was filed with the com-
mission, and on February 11, 1946, there was a finding that
the previous order had awarded proper compensation. An-
other hearing was held in 1947, and on April 4, 1947, the
commission entered another order denying the claim for
additional compensation. Thereafter an action was com-
menced to review the last order, and in confirming an order
of the circuit court dismissing the action, we said here
(p. 613) :

"It appears that the trial court correctly held that her appli-
cation to the commission after the original order of June 27,
1945, to make a further award based upon her method of
calculation was such an application for additional compensa-
tion as is contemplated by sec. 102.16 (1), Stats., and that
the order of February 11, 1946, was in effect an order deny-
ing such further application, which she had the duty of having
reviewed within twenty days."

It therefore appears, as argued by the attorney general,
that that case did not hold that the commission lost power
to award additional compensation if an appeal is not taken to

the commission within twenty days of the examiner's order based on a stipulation not containing the word "compromise." But it did hold that where there is an application for additional compensation and a denial by an examiner of the request for additional compensation, unless an appeal is taken to the commission within twenty days, the action of the examiner becomes final. The allowance of additional compensation there was not dependent upon setting aside an award based on stipulation.

The last sentence of sec. 102.16 (1), Stats. 1949, refers to two classes of stipulation of settlement. In *Metropolitan Casualty Ins. Co. v. Industrial Comm., supra,* it was held that payment and release did not constitute compromise. We are satisfied from the authorities referred to that when an award based on stipulation fails to order payment of the correct amount of compensation, the commission may, on its own motion or on application, order a hearing and, after such hearing, award proper compensation. As said in the case of *Nystrom v. Industrial Comm.* (1928), 196 Wis. 406, 409, 220 N. W. 188:

"The purpose of the compensation act clearly makes it the duty of the Industrial Commission to find the facts and determine the compensation irrespective of the presentation of the case by attorneys; in fact, the law designedly contemplates that the Industrial Commission shall protect the rights of the injured workman and his dependents."

As to the dependency of the infant, it has been determined that one situated as Margaret Suhr was may be held to be living with her father at the time of his death, and the fact that the physical dwelling together did not continue does not destroy her right to be entitled to death benefits on his death. The commission found that she was living with her father and dependent upon him. In considering the question here involved, the case of *Milwaukee Western F. Co. v. Industrial Comm.* (1923), 179 Wis. 223, 190 N. W. 439,

was cited. In that case a minor son who was actually living in Austria while his father lived in Wisconsin, because of the circumstances, was held to be a dependent.

In deciding the case at bar, the learned trial judge said:

"The question is one of intention to break the relationship of father and child. If this did not exist, then the daughter herein was 'living with' the father."

It appears further, that after the death of her mother, Margaret Suhr was sent to live with her brother and sister-in-law as a matter of convenience to all concerned. The father's employment made necessary his traveling, and he maintained only two rooms for himself as his home. The trial court was convinced that "It was not practical for him to try and maintain a home for his minor daughter after the death of his wife." The court was of the further opinion that "In view of the fact that it was more convenient to have Margaret live with her brother and sister-in-law, it cannot be said that George Suhr intended to break the natural relationship between father and child. He visited Margaret often, and continued to be concerned about her well-being and support." Sec. 102.51 (1), Stats. 1949, provided who were dependents. That section reads in part:

"The following shall be conclusively presumed to be solely and wholly dependent for support upon a deceased employee: A wife upon a husband with whom she is living at the time of his death; a husband upon a wife with whom he is living at the time of her death; a child under the age of eighteen years . . . upon the parent with whom he is living at the time of the death of such parent, there being no surviving dependent parent."

The voluntary effort of the brother and his wife to assist in the emergency resulting from the death of the mother does not relieve the father of his responsibility nor destroy the

relationship which makes Margaret legally dependent upon her father at the time of his death.

It is considered that the commission's findings were properly confirmed.

*By the· Court.*—Judgment affirmed.