DENTICI, Respondent, vs. INDUSTRIAL COMMISSION and another, Appellants.

*May 5—June 2, 1953.*

For the appellant Industrial Commission there was a brief by *Austin T. Thorson* and *Arnold J. Spencer,* both of Madison, and oral argument by *Mr. Thorson.*

For the appellant Kearney & Trecker Corporation there was a brief by *Lamfrom, Tighe, Engelhard & Peck,* attorneys, and *Leon B. Lamfrom* of counsel, all of Milwaukee, and oral argument by *Mr. Lamfrom.*

For the respondent there was a brief and oral argument by *Max Raskin* of Milwaukee.

FAIRCHILD, J. The planned and hoped-for result outlined in sec. 108.04 (4) (b), Stats. 1943, and appearing in later statutes as sec. 108.04 (7) (a) and (b) is that an employee shall be eligible for the benefits arising from unemployment compensation under certain circumstances favorable to the employee, but that an employee is barred from eligibility for benefits if "he has left his employment voluntarily without good cause attributable to the employer." From the facts disclosed by the record, the question for our determination is whether or not there is evidence to sustain the commission's finding that the claimant in the case at bar voluntarily "quit" in opposition to his contention that he was discharged. Here it must be held that there was a voluntary termination of employment by the employee, because the evidence shows that by his acts he intended to leave his employment rather than accept a transfer. When an employee shows that he intends to leave his employment and indicates such intention by word or manner of action, or by conduct inconsistent with the continuation of the employee-employer relationship, it must be held, as the Industrial Commission determined here, that the employee intended and did leave his employment voluntarily and by refusing to accept the transfer left without good cause attributable to the employer. As appears from the statement of facts there is evidence clearly supporting the finding that the claimant so left his employment.

Claimant had been employed from February, 1940, to the time of his leaving, about March 2, 1944. The employer is a manufacturer of machine tools, among other things, and

was chiefly engaged in war production just before the time of the proposed transfer of the employee to a different department. In 1943 there was a diminishing demand for machine tools and an increasing demand for the machining of airplane parts, truck transmissions, etc. The department in which the employee was engaged was directly affected by this lowering demand for machine tools and there resulted a necessity for the shifting of workers from a department in which work was becoming slack to departments in which there existed a need for men. The employer's policy was to avoid laying off employees for lack of work, and there was therefore a resorting to the described transfer of employees to work for which each was qualified. In making transfers, it appears that the individual's qualifications, experience, and draft status were factors of considerable importance. The employer operated under a union agreement and, because of the union contract, seniority was considered where other factors were equal, and the claimant's seniority would not be affected by the transfer. It appears that about February 29, 1944, the claimant was notified that he was to be transferred to the machine department. This decision was based on claimant's draft classification as "2B," that work in the assembly department was falling off, and that he was qualified for machine work by previous experience. This transfer afforded him an opportunity to continue in employment at various jobs, although it would reduce the net earnings at first. The wages in the new department did not go below the base rate, and there was a possibility of ultimately earning more in the machine department than he would have earned had he remained in the assembly department. The claimant refused to accept the transfer and insisted on remaining in the assembly department at his old job. The employer refused to permit the claimant to continue in the assembly department and advised him that it considered his refusal to accept the work in the machine department as con-

stituting a "quitting." The claimant persisted in his refusal to accept work in the machine department, and because of his refusal the employment terminated.

In response to the claim for unemployment benefits, the employer answered that the claimant was ineligible for unemployment benefits because he left his employment voluntarily within the meaning of sec. 108.04 (4) (b) of the statutes (Stats. 1943). The matter was brought before the proper authorities, investigated by them, and eventually came before the Industrial Commission, where the conclusion was reached that the claimant was not entitled to the benefits of the unemployment compensation asked for by him.

The learned trial judge, referring to the ruling of the Industrial Commission, confirming the decision of the appeal tribunal, was of the opinion that the transfer, resulting as it did in a present reduction in earning, justified a holding that the claimant was entitled to unemployment compensation. But the facts disclosed show that it was not necessary for claimant to be without employment, that he had the alternative of accepting the job provided for by the transfer and continuing in the employ of the employer, or acting to terminate the relation on his own responsibility.

Because the facts constituting the severance of the employee-employer relationship are without dispute, it is considered that the Industrial Commission properly approved the finding of the appeal tribunal holding "that the employee left his employment voluntarily without good cause attributable to the employer within the meaning of sec. 108.04 (4) (b) of the statutes [Stats. 1943]." The commission declared that it had reviewed the evidence and found that it supported the appeal tribunal's findings of fact and therefore affirmed the decision of that tribunal and denied the benefits accordingly. The findings of the Industrial Commission are sustained and are controlling.

The findings of fact and conclusions of law made by the court below are without effect and cannot result in over-throwing the well-supported findings of the Industrial Commission. It appears that the circuit court overlooked the consistent and logical interpretation of the phrase "voluntarily quit" when an employer is confronted with a refused transfer. See Digest of Wisconsin U. C. Cases 1952, VL–764, Cases 46–C–78, 49–A–566, 49–A–1025, all of which involve transfers under conditions and circumstances similar to those existing in the case at bar.

*By the Court.*—Judgment of the circuit court for Dane county is reversed and cause remanded with direction to reinstate the decision of the Industrial Commission and render judgment accordingly.