CHEESE, Appellant, v. INDUSTRIAL COMMISSION and another, Respondents.

*September 5—October 1, 1963.*

10

12

For the appellant there was a brief and oral argument by *Harvey L. McCormick* of Milwaukee.

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer,* chief counsel of the unemployment compensation division.

FAIRCHILD, J.　There is little or no conflict in the testimony, and the evidence supported the findings made by the appeal tribunal, as well as those findings made by the commission which were consistent with those made by the appeal tribunal. The main points of difference between the two sets of findings are:

(1) Claimant sought to justify his putting water in the fuel can in the morning on the grounds that the crane operator, whose directions he had been told to follow, insisted on it, and that the operator promised he would empty the water when no longer required. The appeal tribunal found in accordance with claimant's testimony. The commission made no finding on this proposition, because it deemed it immaterial.

(2) There is no reason to suppose that claimant knowingly and deliberately poured water into the fuel tank of the crane, although that was the employer's original contention. Claimant testified he was not expecting water to be in the can when he emptied it into the fuel tank, and it was a mistake; that the filler pipe was an inch and a quarter in diameter and located near the floor, so that it was necessary to turn the can over quickly and insert the spout in the pipe,

so that one did not observe the liquid as it was being poured. Claimant's testimony that he had forgotten that one of the cans contained water was not incredible. The earlier incident involving the water occurred shortly after 6 a. m., the later incident about 3 p. m. Claimant had performed other work in the meantime. Just before the later incident he had been standing on a ship which was being loaded by the crane, and giving signals to the operator. It was necessary to call on someone else to relieve him in that task before he could go to the crane and fuel it. The appeal tribunal characterized his conduct as *not being* carelessness of such a degree as to constitute conduct evincing a wilful and wanton disregard of the employer's interests. The commission took the opposite view, that it *was* carelessness of such degree as to evince a wanton disregard of the standards which the employer had the right to expect.

*With respect to the first point of difference,* we think the commission erred in concluding that it was immaterial whether claimant acted on the instructions of a fellow employee whose directions he had been told to follow. This is material because, as will be seen, the crucial question is the employee's intent or attitude which attended his act or omission which is alleged to be disqualifying misconduct.

As the record stands, there is no testimony which contradicts the claimant's version of how he came to put water in the fuel can and leave it in the crane. The operator involved was a Mr. Best, but he was not called as a witness nor shown to be unavailable. There was testimony by the assistant operations manager of the employer describing a conversation between Mr. Afram, one of the owners or officers of the employer, and claimant immediately after the difficulty with the crane had been diagnosed. This witness did indicate that claimant remained silent when asked why he poured water in the fuel tank. Claimant testified that he

tried to tell Mr. Afram the same facts he gave at the hearing. The testimony of the assistant operations manager is not very clear and suggests there may have been some confusion between the two acts of putting water into the fuel can and pouring the contents of the can into the fuel tank. It is apparent that on at least one occasion Mr. Afram did not give claimant an opportunity to answer a question, and it is very probable that the interview was quite heated. Claimant is thirty-four years of age, with education through the ninth grade. It is apparent from the record that he cannot always express himself clearly. It is undisputed that he gave Mr. Afram at least a part of the same explanation he gave at the hearing. Under the circumstances, we do not deem that the testimony concerning this conversation would be a sufficient basis for finding that the crane operator did not give directions as claimant asserted.

*With respect to the second point of difference,* insofar as a person's acts, or his intent in doing such acts, are questions of fact, where the evidence and reasonable inferences therefrom would support any one of two or more findings, a finding by the commission is conclusive.[1]

Here, however, the question is whether the facts fulfil a particular legal standard. This court determined that the term "misconduct connected with his employment" as used in sec. 108.04 (5), Stats., was an ambiguous term of doubtful meaning, and found it necessary to interpret it with the view of effecting the general purpose of the legislature.[2]

We consider that the difference between the appeal tribunal's evaluation of claimant's conduct and that of the commission is really a question of law, and the commission's determination does not bind us.

---

[1] *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 402, 69 N. W. (2d) 573, 70 N. W. (2d) 576.

[2] *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 296 N. W. 636.

In *Boynton Cab Co. v. Neubeck*,[3] this court examined the background and purposes of the Unemployment Compensation Act, and pointed out that the object was to cushion the effect of unemployment, and that the provision making the employee ineligible if discharged for misconduct imposed a forfeiture or penalty. It may be good business for an employer to discharge an inefficient or incompetent employee, but that fact is irrelevant to the question of whether the discharged employee shall receive benefits. The court recognized that less-capable workers may well have been those for whose benefit the act was largely designed, and concluded that the provision as to misconduct—

". . . will be given the construction which is least favorable to working a forfeiture, so as to minimize the penal character of the provision by excluding rather than including conduct or cases not clearly intended to be within the provision."

The court stated the test as follows:

"The application of these principles leads to the conclusion, in view of the matters to be taken into consideration, as stated above, that the intended meaning of the term 'misconduct,' as used in sec. 108.04 (4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment

---

[3] *Supra,* footnote 2, p. 259.

or discretion are not to be deemed 'misconduct' within the meaning of the statute." [4]

We consider that, as a matter of law, the claimant's conduct, though it may well have been negligent, falls short of manifesting wrongful intent or evil design or intentional and substantial disregard of the employer's interests or the employee's duties. Therefore, the decision of the commission should have been set aside by the circuit court.

Some discussion at the oral argument suggested that the commission might be free, upon remand, to do other than establish claimant's eligibility for benefits. It is our judgment that the present record would support no other decision. It is true that when the matter was originally before the commission, on petition for review of the appeal tribunal decision, the commission had power to direct the taking of additional testimony.[5] It was, however, required to do so promptly. The commission elected to decide the matter upon the record before it, rather than to take additional testimony. Probably the commission would not, in a proper case, wholly lack power to hear additional testimony upon remand after its decision had been set aside. It is our opinion, however, that in a case such as this further delay for the taking of additional testimony would be contrary to the statutory requirement that the commission act promptly.

*By the Court.*—Judgment reversed, cause remanded with directions to enter judgment setting aside the decision of the Industrial Commission.

---

[4] *Supra,* footnote 2, p. 259.
[5] Sec. 108.09 (6) (b), Stats.