CONSOLIDATED CONSTRUCTION COMPANY, INC., Respondent, v. CASEY, Appellant: DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant.

*No. 82 (1974). Argued October 27, 1975.—Decided March 2, 1976.*
(Also reported in 238 N. W. 2d 758.)

For the appellant there were briefs by *Curry First* and *Perry & First,* and oral argument by *Walter F. Kelly* all of Milwaukee.

For the respondent there was a brief by *Bachman, Cummings & McIntyre,* and oral argument by *Joseph Cummings* all of Appleton.

DAY, J.  The judgment appealed from reverses a decision of the Department of Industry, Labor, & Human Relations (DILHR) finding that Patrick J. Casey had not been guilty of "misconduct" within the meaning of sec. 108.04 (5), Stats.,[1] and was therefore eligible to receive unemployment compensation following discharge by his employer, Consolidated Construction Co., Inc. (Consolidated). The issues raised on appeal are first, did DILHR err in finding that Mr. Casey's refusal to trim his hair and shave his beard did not constitute misconduct within the meaning of the statute, and second, even if Mr. Casey was properly discharged for "misconduct," is he still eligible for benefits because denial would unconstitutionally condition his eligibility for benefits on his waiver of an asserted first amendment right, *i.e.,* to wear his hair and beard as he wished?

On March 24, 1972, Consolidated issued a grooming code for its employees that, in part, provided that hair should be of such length that it would not touch the ears or the collar, or fall below the eyebrows, or protrude

[1] 108.04 (5) "DISCHARGE FOR MISCONDUCT. An employe's eligibility, for benefits based on those credit weeks then accrued with respect to an employing unit, shall be barred for any week of unemployment completed after he has been discharged by the employing unit for misconduct connected with his employment; provided, moreover, that such employe shall be deemed ineligible for benefits (from other previous employer accounts) for the week in which such discharge occurred and for the 3 next following weeks."

below the band of "proper worn headgear." The grooming code also provided that "the face will be clean shaven other than the wearing of an acceptable mustache or sideburns. . . ." Among the reasons given in explanation of the grooming code were the necessity of unobstructed vision when climbing, the possibility of hair coming in contact with tools, and the possibility of hair catching fire.

At that time Mr. Casey's hair extended about two inches below his shoulders. He tied his hair in a "pony tail" while working. He also wore a full beard extending two or three inches below his chin. Mr. Casey notified his supervisor that he would not comply with the grooming code, but did offer to contain his hair in a hairnet. This was refused as an alternative on the ground that there was too much hair to fit within the hard hat and that, in any case, the net was flammable. No discussion of alternative safeguards for Casey's beard occurred. On March 28, 1972, Mr. Casey went to see Consolidated's vice-president and director of personnel and repeated his suggestion that he be allowed to use a hairnet. He was discharged for failure to comply with the rule.

The initial determination of DILHR was in favor of Mr. Casey. Consolidated appealed, and a fact-finding hearing was held before an appeal tribunal consisting of a single examiner. A Consolidated witness testified as to the hazardous nature of Mr. Casey's work; his duties included daily contact with drills, electric impact steel saws, torches, and other power tools used to cut and shape metal. These tools involved flame and sparks, and had various moving parts. They often had to be used on scaffolds and ladders, sometimes in positions where the tools were within a few inches of the face. Although a face shield may be used when sparks are

present, the testimony was that it extends only as far down as the lower lip. Consolidated felt that a hairnet would not adequately restrain long hair under active job conditions, and believed that no fireproof hairnet was available.

Mr. Casey, on the other hand, physicially demonstrated at the hearing that bending and lifting motions would not loosen his netted hair. He pointed out that the flammability of a hairnet concealed by a hard hat, which was always worn, was no greater than that of the hair itself. He testified that if his beard was ignited he could extinguish such fire before it reached his flesh.

Although there was some discussion of government regulations at the hearing, it is not argued on appeal that any specific federal or state safety regulation mandated the form of the Consolidated grooming code. It was also testified by the employer that some of its customers objected to employees with long hair and beards, but this likewise is not now urged as a justification for Mr. Casey's discharge.

Following the hearing, a decision was rendered reversing the initial determination in favor of Mr. Casey, and finding that he was ineligible for unemployment compensation. From this decision Mr. Casey appealed to the Industry, Labor and Human Relations Commission. The Commission reversed the decision of the appeal tribunal, finding that the employee's refusal to conform to the grooming code did not constitute conduct evincing a willful, wanton, or substantial disregard of the employer's interest amounting to "misconduct" within the meaning of the statute.[2] The circuit court reversed the DILHR commission on the ground that the choice of

---

[2] "It is readily apparent that in cases where the length of a worker's hair is such that it could obstruct his vision, become entangled in machinery, or otherwise constitute a source of danger to the individual or co-workers, there is room for legitimate concern for safety. However, if the hair can be satisfactorily re-

safety measures was up to the employer rather than the employee, and that a refusal to comply with the employer's preference in this regard constituted misconduct.

Review by this court of DILHR decisions under the unemployment compensation statute, chapter 108, is limited to questions of law:

108.09 (7) (b) "Any judicial review under this chapter shall be confined to questions of law, and the provisions of ch. 102, 1971 Stats., with respect to judicial review of orders and awards shall likewise apply to any decision of the commission reviewed under this section."

Section 102.23, Stats., incorporated into chapter 108, specifically provides that factual findings made by DILHR are conclusive:

strained as by confining it within some type of head covering, any requirement relating to length of hair cannot be justified on the basis of safety. Likewise, if a person's beard might subject him to hazards in performing his work, it would not be unreasonable to require the wearing of some protective covering. If there is a hazard arising from the wearing of a beard, and such hazard cannot be eliminated by use of protective covering, the imposition of some limitation on the growth or wearing of a beard might be justified as a valid safety precaution.

"In the instant case, the employe suggested to the employer that his hair be contained in a manner which would eliminate any possibly hazardous condition arising because of the length of his hair. His suggestion was summarily rejected and he was given the option of having his hair length considerably shortened or lose his employment.

"Under the circumstances, the employe's refusal to submit to the employer's ultimatum did not constitute conduct evincing a wilful, wanton or substantial disregard of the employer's interests amounting to misconduct connected with his employment.

"The commission, in reversing the decision of the appeal tribunal in this case, finds that the appeal tribunal incorrectly considered the employer's rules to be reasonable and necessary as safety measures and the employe's refusal to conform thereto to be an unreasonable interference with the employer's interests."

"102.23 **Judicial review.** (1) The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive."

Such factual findings cannot be disturbed on appeal unless unsupported by credible evidence on the record as a whole. *McGraw-Edison Co. v. ILHR Dept.* (1974), 64 Wis. 2d 703, 709, 221 N. W. 2d 677. However, the question of whether Mr. Casey's behavior was "misconduct" is a question of law reviewable on appeal. *McGraw-Edison Co. v. ILHR Dept., supra,* at 713.

Moreover, since the question in this case—of hair and beard length—is one of industrial safety, this court must also recognize[3] that DILHR has an expertise in the area of safety, having been specifically charged by statute with authority in this area.[4] This court has long recognized that "it is the duty of the Industrial Commission [now DILHR] to ascertain what safety devices or safeguards will make various places of employment as free from danger as the employment or place of employment may reasonably permit. . . ." *Bentley Bros.,*

---

[3] "227.20 **Scope of review** . . . (2) Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it."

[4] 101.02 (15) "(h) To investigate, ascertain, declare and prescribe what safety devices, safeguards or other means or methods of protection are best adapted to render the employes of every employment and place of employment and frequenters of every place of employment safe, and to protect their welfare as required by law or lawful orders.

"(i) To ascertain and fix such reasonable standards and to prescribe, modify and enforce such reasonable orders for the adoption of safety devices, safeguards and other means or methods of protection to be as nearly uniform as possible, as may be necessary to carry out all laws and lawful orders relative to the protection of the life, health, safety and welfare of employes in employments and places of employment or frequenters of places of employment."

*Inc. v. Industrial Commission* (1928), 194 Wis. 610, 614, 217 N. W. 316.

In the present case, DILHR found that Mr. Casey's hair could be held in a hairnet and concealed under the "hardhat" worn on the job. There was ample evidence to support this finding, insofar as Mr. Casey demonstrated his ability to bend and move about with his hair sealed under his protective helmet. This court is bound by DILHR's factual finding in this respect.

Because alternative means of protection were available, DILHR found, and we agree, that Consolidated's inflexible hair length requirements were not "reasonable" within the meaning of *Gregory v. Anderson* (1961), 14 Wis. 2d 130, 138, 109 N. W. 2d 675, because there was no showing that the employer's business interest would be harmed if an alternate method were used:

". . . It is a reasonable rule if a violation is reasonably likely to harm the employer's business interests."

Since Consolidated's grooming code was not necessary for safety in the form in which promulgated, refusal to comply with it could not constitute statutory "misconduct," which this court has long defined as a "wilful or wanton disregard of an employer's interests" *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259, 296 N. W. 636.

As to Mr. Casey's beard, we agree with DILHR that if a person's beard might subject him to hazards in performing his work, it would not be unreasonable to require the wearing of some protective covering. If a hazard arising from a beard could not be eliminated by the use of protective covering, the imposition of some limitation on the growth or wearing of a beard might be justified as a valid safety precaution. In the present case, however, DILHR failed to make a specific finding as to whether Mr. Casey's beard was a hazard. The

question was not reached because DILHR's decision (*supra,* note 2) apparently assumed that there existed an alternative means of protecting the beard analogous to the hairnet. In fact, there is nothing in the record indicating that such an alternative exists, and DILHR's decision cannot be affirmed on this basis. The unresolved question of whether Mr. Casey's beard was, in fact, hazardous has now become critical.

The evidence on this question is inconclusive. The employer introduced testimony that the beard could be ignited by sparks or become entangled in machinery held close to the face. However, there was no evidence that sparks would do anything more than singe a beard, or that the employer had any previous accident experience with hair or beards. On this record, an appellate court should not attempt to make a factual decision, especially in an area in which an administrative agency has a concentrated expertise. We conclude that this case must be remanded to DILHR for a finding of whether Mr. Casey's beard was actually a potential hazard under the circumstances of his job. If it were, the employer's rule would be reasonable under *Gregory v. Anderson, supra,* and Mr. Casey's refusal to comply would be "misconduct."

The propriety of remanding a case to an administrative body which has omitted necessary factual findings, where the evidence is inconclusive, was recently recognized in *Edmonds v. Bd. of Fire & Police Commrs. of City of Milwaukee* (1975), 66 Wis. 2d 337, 349, 224 N. W. 2d 575:

"In the instant case, the factual basis of the board's decision is unknown. Conflicting testimony was presented at the hearing concerning various allegedly wrongful acts performed by the respondents. The respondents themselves do not know what the board felt they did wrong. . . .

"We conclude that the case should be remanded to the board for the board to separately state as to each respondent, specific findings of fact and conclusions of law in the manner prescribed for state agencies by sec. 227.13, Stats."

Sec. 227.13, Stats.,[5] has been interpreted to require a remand where there is evidence on which the agency might make the factual findings necessary to support its conclusion, but it has failed to do so, *Bell v. Personnel Bd.* (1951), 259 Wis. 602, 607, 49 N. W. 2d 889, *State ex rel. Ball v. McPhee* (1959), 6 Wis. 2d 190, 203, 94 N. W. 2d 711, although the reviewing court can supply a finding of fact where the evidence is clear and convincing, *Forest Home Dodge, Inc. v. Karns* (1965), 29 Wis. 2d 78, 87, 138 N. W. 2d 214. Because of the lack of evidence here sufficient to make a finding either way, the case is remanded to the commission for a hearing on the issue of whether or not Mr. Casey's beard, under all the facts and circumstances, would in fact present a hazard sufficient to warrant imposition of the rule and to make failure to comply with it "misconduct." Both parties should be allowed to present evidence at such hearing. *See: Joseph Schlitz Brewing Co. v. ILHR Dept.* (1975), 67 Wis. 2d 185, 226 N. W. 2d 492.

We would emphasize that the ultimate legal question here is not whether Consolidated's grooming code was legally valid, or whether Consolidated could discharge Mr. Casey for his refusal to comply. The question is only whether there was statutory "misconduct." The principle that violation of a valid work rule may justify discharge but at the same time may not amount to

---

[5] "227.13 **Decisions.** Every decision of an agency in a contested case shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each contested issue of fact without recital of evidence."

statutory "misconduct" for unemployment compensation purposes has been repeatedly recognized by this court. *Fitzgerald v. Globe-Union, Inc.* (1967), 35 Wis. 2d 332, 151 N. W. 2d 136; *Milwaukee Transformer Co. v. Industrial Commission* (1964), 22 Wis. 2d 502, 126 N. W. 2d 6. The law presumes that the employee is not disqualified from unemployment compensation, and places on the employer the burden of introducing credible evidence sufficient to convince DILHR that some disqualifying provision—here "misconduct"—should bar the employee's claim. *Kansas City Star Co. v. ILHR Dept.* (1973), 60 Wis. 2d 591, 602, 211 N. W. 2d 488.

With respect to Mr. Casey's constitutional argument—that unemployment benefits cannot be denied to one discharged for assertion of a First Amendment right—we would disagree. In a case where the evidence showed that an unreasonable safety hazard was created by the grooming preferences of an employee, and that such grooming preferences violated a safety rule of the employer instituted to guard against a hazard reasonably likely to harm the employer's business interests, the denial of unemployment compensation would be justifiable. No case directly on point has come to our attention, but a number of cases have stated or implied that a valid safety interest justifies restriction of whatever constitutional right exists to choice of hairstyle. *Yarbrough v. City of Jacksonville* (M. D. Fla. 1973), 363 Fed. Supp. 1176, 1179; *Crews v. Cloncs* (7th Cir. 1970), 432 Fed. 2d 1259, 1266.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.