HOLY NAME SCHOOL OF the CONGREGATION OF the HOLY NAME OF JESUS OF KIMBERLY, Plaintiff-Appellant,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and Mary P. Retlick, Defendants-Respondents.

Court of Appeals

*No. 81–2245. Submitted on briefs August 16, 1982.—*
*Decided October 19, 1982.*
(Also reported in 326 N.W.2d 121.)

For the appellant the cause was submitted on the briefs of *Everson, Whitney, Everson, Brehm & Pfankuch, S.C., Philip R. Brehm* and *Bruce B. Deadman* of Green Bay.

For the respondent Department of Industry, Labor and Human Relations, there was a brief by *Melvin H. Jarchow,* Labor and Industry Review Commission.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Holy Name School appeals from a judgment affirming a decision of the Labor and Industry Review Commission that Mary Retlick is qualified to receive unemployment compensation benefits pursuant to the Unemployment Compensation Act, ch. 108, Stats. Holy Name contends that Retlick is not entitled to these benefits because she voluntarily terminated her employment with the school under sec. 108.04(7) (a), Stats.[1] Alternatively, Holy Name asserts that Retlick is disqualified from receiving such benefits because she engaged in "misconduct" within the meaning of sec. 108.04(5), Stats.[2] Because we conclude that the commission's findings of fact are supported by credible and substantial evidence and that Retlick did not "voluntarily terminate" her employment or engage in "misconduct," we affirm.

Holy Name School is a private institution operated by the Green Bay Diocese of the Roman Catholic Church. The school employed Retlick as a kindergarten teacher

---

[1] Section 108.04(7) (a), Stats., provides:
Voluntary Termination of Employment. (a) If an employe terminates his or her employment with an employing unit, the employe shall be ineligible for any benefits for the week of termination and thereafter until he or she has again been employed within at least 4 weeks and has earned wages of at least $200, except as otherwise provided in this subsection.
Although the word "voluntary" does not appear in the body of this statute, our supreme court has construed the inclusion of the word "voluntary" in the title as evincing a legislative intent that a termination under § 108.04(7) (a) be voluntary. *See, e.g., Hammer v. DILHR*, 92 Wis. 2d 90, 94–95 n. 3, 284 N.W.2d 587, 589 n. 3 (1979).

[2] Section 108.04(5), Stats., provides, in part:
Discharge for Misconduct. An employe's eligibility, for benefits based on those credit weeks then accrued with respect to an employing unit, shall be barred for any week of unemployment completed after he has been discharged by the employing unit for misconduct connected with his employment . . . .

for approximately five years. Retlick signed a contract when she was hired containing the following provision:

IT IS FURTHER AGREED that the Teacher is subject to all policies, rules and regulations of the Diocesan Department of Education and the Parish School now in force and as may be hereinafter enacted by the aforementioned bodies.

Retlick also signed a document entitled "Declaration of Catholic Educational Philosophy," which the contract incorporated by reference. This declaration contains a provision that teachers should set an example for their students and "lead by their lives in bearing witness to Christ."

During Retlick's employment, school personnel discovered that Retlick planned to marry a divorced man. The school principal informed Retlick that in order to comply with the tenets of the Catholic Church and to be considered a practicing Catholic, she and her fiance had to take steps to have the church annul her fiance's former marriage and to bless her marriage to her fiance. The principal also advised Retlick that her failure to comply with these requirements could result in a loss of employment because she would be in violation of her teaching contract, the "Declaration of Philosophy," and a written diocesan educational board policy for religion teachers containing requirements for practicing Catholics.

The board of education met on February 23, 1978, to determine the effect of Retlick's impending marriage on her employment. The board decided not to renew Retlick's contract for 1978–79, but it agreed to permit Retlick to teach until the end of the school year, and it provided Retlick with the option to reapply for employment after she had taken all appropriate steps to have her marriage blessed. Although Retlick had initiated proceedings to have her fiance's former marriage annulled and her marriage blessed, this process was not completed

when she married on February 25, 1978. Retlick continued to teach at the school until June 7, 1978, after which she applied for unemployment compensation.

The Department of Industry, Labor and Human Relations (DILHR) made an initial determination that Retlick was discharged, but not for "misconduct" under sec. 108.04(5), and that she was therefore entitled to unemployment compensation benefits. Holy Name appealed, and an appeal tribunal of DILHR affirmed the initial determination after it concluded that Retlick's conduct was neither "misconduct" nor a "voluntary termination." Holy Name appealed this decision to the commission, which supported the appeal tribunal's findings of fact and conclusions of law and affirmed the initial eligibility determination. The circuit court subsequently affirmed the commission's decision.[3]

Our standard of review of the commission's determination is the same as that of the circuit court[4] and is governed by statute. Judicial review under ch. 108 is primarily confined to questions of law. *See* sec. 108.09 (7), Stats. Section 102.23(6), Stats., which sec. 108.09 (7) incorporates by reference,[5] sets forth the following limited standard of review of the commission's findings of fact:

If the commission's order or award depends on any fact found by the commission, the court shall not substitute

---

[3] Holy Name appealed to the circuit court pursuant to § 108.09 (7)(a), Stats., which provides, in pertinent part:

Judicial Review. (a) Either party may commence judicial action for the review of a decision of the commission under this chapter after exhausting the remedies provided under this section . . . .

[4] *Miller Brewing Co. v. DILHR*, 103 Wis. 2d 496, 501, 308 N.W.2d 922, 925 (Ct. App. 1981).

[5] *Farmers Mill of Athens, Inc. v. DILHR*, 97 Wis. 2d 576, 579, 294 N.W.2d 39, 41 (Ct. App. 1980).

its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence.

Substantial evidence for purposes of this statute does not constitute the preponderance of the evidence. The test is whether reasonable minds could arrive at the same conclusion the commission reached. *Farmers Mill of Athens, Inc. v. DILHR,* 97 Wis. 2d 576, 579, 294 N.W. 2d 39, 41 (Ct. App. 1980). In reviewing administrative agencies' factual findings under similar provisions containing the "substantial evidence" standard, our supreme court has stated that "there may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the agency to determine which view of the evidence it wishes to accept." *Robertson Transportation Co. v. PSC,* 39 Wis. 2d 653, 658, 159 N.W.2d 636, 638 (1968).

We are not bound by the commission's determination of a question of law. *Nottelson v. DILHR,* 94 Wis. 2d 106, 115, 287 N.W.2d 763, 767 (1980). The commission's legal conclusion will be given weight, however, when its expertise is significant to a value judgment involved in a question of law. *Id.* at 116–17, 278 N.W.2d at 768.

In this case, the commission made findings concerning Retlick's conduct and intent in engaging in such conduct. The commission then determined whether the statutory concepts of "voluntary termination" and "misconduct" had been met. Questions concerning employe and employer conduct and intent are questions of fact. *See*

*Nottelson,* 94 Wis. 2d at 115, 287 N.W.2d at 768; *Cheese v. Industrial Commission,* 21 Wis. 2d 8, 14, 123 N.W.2d 553, 557 (1963). Whether Retlick voluntarily terminated her employment under sec. 108.04(7)(a) is a question of law. *Nottelson,* 94 Wis. 2d at 115, 287 N.W.2d at 768. Similarly, a determination that Retlick engaged in "misconduct" under sec. 108.04(5) is a legal conclusion. *Cheese,* 21 Wis. 2d at 15, 123 N.W.2d at 557. In reviewing the commission's determination that Retlick is qualified for unemployment compensation benefits, the law presumes that an employe is not disqualified from such compensation, and it places on the employer the burden of introducing credible evidence sufficient to convince DILHR that some disqualifying provision should bar the employe's claim. *Consolidated Construction Co. v. Casey,* 71 Wis. 2d 811, 820, 238 N.W.2d 758, 763 (1976).

Holy Name contends that Retlick intended to leave her employment with the school because she failed to pursue the option of waiting to marry until all steps had been taken to have her marriage blessed and because she married with full knowledge that her marriage would be contrary to tenets of the Catholic faith and to her employment contract. Holy Name therefore asserts that she "voluntarily terminated" her employment under sec. 108.04(7)(a).

In *Dentici v. Industrial Commission,* 264 Wis. 181, 186, 58 N.W.2d 717, 720 (1953), our supreme court set forth the applicable test to determine whether an individual has voluntarily terminated employment under ch. 108:

When an employee shows that he intends to leave his employment and indicates such intention by word or manner of action, or by conduct inconsistent with the continuation of the employee-employer relationship, it must be held . . . that the employee intended and did leave his employment voluntarily . . . .

See also *Hanmer v. DILHR,* 92 Wis. 2d 90, 94, 284 N.W. 2d 587, 589 (1979) ; *Fish v. White Equipment Sales & Service, Inc.,* 64 Wis. 2d 737, 745, 221 N.W.2d 864, 868 (1974). A determination of whether there has been a voluntary termination is therefore dependent on findings of fact concerning an employe's conduct and intent.

We conclude that there is credible and substantial evidence to support the appeal tribunal's finding, which the commission adopted, that Retlick intended to preserve the employment relationship and did not intend to leave her employment. The record indicates that even prior to her discussion with the principal concerning the ramifications of her impending marriage, Retlick had contacted a priest to initiate annulment proceedings. Retlick testified at the hearing before the appeal tribunal that she and her fiance had not set a definite wedding date when she began the annulment and marriage validation procedure, and that only a personal crisis involving her fiance's two small children prompted their sudden decision to marry so that she could be a mother to the children. Retlick did, however, continue to take steps to have her marriage validated after the board voted not to renew her contract and after her marriage.

The record also indicates that Retlick attempted to preserve the employment relationship by asking the principal if she could attend the February 23 board meeting to discuss her personal predicament. The principal requested, however, that she not attend. Although the board voted not to renew Retlick's contract, it allowed her to continue to teach until the end of the school year and provided her with the option of reapplying for her position. Retlick did continue to teach until the end of the school year, and she pursued the reapplication option at that time. Given this evidence, reasonable minds could arrive at the commission's determination

that Retlick intended to preserve her employment relationship. The evidence also supports a conclusion that Retlick's conduct in marrying was not inconsistent with the continuation of the employment relationship. We therefore conclude that, as a matter of law, Retlick did not voluntarily terminate her employment under sec. 108.04 (7) (a).

Holy Name also contends that Retlick's marriage was a deliberate interference with her employer's known interest in having a teacher serve as an example of the school and diocese's religious doctrines. Holy Name therefore asserts that Retlick is ineligible for unemployment compensation benefits because she engaged in "misconduct" under sec. 108.04 (5).

There is no definition of "misconduct" in ch. 108. Our supreme court, however, defined that term in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941):

[T]he intended meaning of the term "misconduct" as used in sec. 108.04 (4) (a), Stats. [now sec. 108.04 (5)], is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.

This definition has been consistently cited with approval. *See, e.g., Consolidated Construction Co.*, 71 Wis. 2d at 817, 238 N.W.2d at 762; *Cheese*, 21 Wis. 2d at 16, 123 N.W.2d at 557–58. The emphasis is on the employe's intent, *see McGraw-Edison Co. v. DILHR*, 64 Wis. 2d 703, 712, 221 N.W.2d 677, 682 (1974), and benefits may not be denied unless the employe's conduct is "an 'inten-

tional and substantial disregard of' or an 'intentional and unreasonable interference with' the employer's interests." *Miller Brewing Co. v. DILHR,* 103 Wis. 2d 496, 499, 308 N.W.2d 922, 924 (Ct. App. 1981) (footnotes omitted).

As the circuit court noted, the application of this definition to the facts of this case is troublesome because it involves employe conduct prompted by personal difficulties that the employer believes is contrary to religious policies it had a right to adopt. In an analogous case involving an employe's violation of a clear work rule, our supreme court stated, "[w]e are less concerned with the 'reasonableness' of the rule . . . than with the 'unreasonableness' of the conduct of the employee in breach of the rule." *Milwaukee Transformer Co. v. Industrial Commission,* 22 Wis. 2d 502, 512, 126 N.W.2d 6, 12 (1964). Both the commission and the circuit court focused on Retlick's intent and conduct, and did not assess the "reasonableness" of the religious tenets Retlick allegedly violated. We believe that is the appropriate focus to avoid a secular intrusion into religious doctrine.

Because this appears to be a situation where two conflicting views may each be sustained by substantial evidence, it was for the commission to determine which view of the evidence it would accept. *See Robertson,* 39 Wis. 2d at 658, 159 N.W.2d at 638. We conclude that there is substantial and credible evidence to support the commission's finding that Retlick did not wilfully or intentionally disregard her employer's interests. As previously noted, Retlick was aware of her employer's interest in upholding church doctrine, and she took steps to have her fiance's former marriage annulled and her marriage blessed both before and after the board meeting and after her marriage. Retlick also attempted to attend the board meeting to explain her personal situation, but

the principal asked her not to do so. The commission's finding that Retlick's decision to marry was due to personal considerations and did not involve any intent to interfere with her employer's interests is supported by Retlick's testimony before the appeal tribunal. There is also no evidence that Retlick disputed the school's authority to adopt religious policies or that she decided to marry in order to challenge those policies. The record indicates that Retlick was in fact concerned with adhering to school regulations, because she testified that although the principal suggested that she live with her fiance prior to marriage, she refused to do so because she feared that such conduct would be "immoral" and in violation of her contract.

The record additionally indicates that the diocesan board policies relating to requirements for practicing Catholics specifically apply to religion teachers. Holy Name hired Retlick to teach kindergarten, and she testified that although she set up her own religion program, the school had never asked or required her to teach religion. We therefore conclude that although Retlick's conduct in marrying a divorced man under these circumstances was contrary to school policies, this conduct did not evince the requisite wanton, willful, or unreasonable disregard of her employer's interest to constitute "misconduct" within the meaning of sec. 108.04 (5).

Our conclusion that Retlick was not discharged for "misconduct" under sec. 108.04 (5) implies nothing about either the school's right to refuse to renew her contract or the validity of that action. We are only concerned with a review of an eligibility determination for unemployment compensation benefits under ch. 108.

Holy Name argues that pertinent provisions of ch. 108 are unconstitutional as applied. Holy Name did not raise this issue in the circuit court, and we need not consider a constitutional question for the first time on

appeal. *See C.F. Trantow Co. v. Industrial Commission,* 262 Wis. 586, 590, 55 N.W.2d 884, 886 (1952) ; *Seeback v. PSC,* 97  Wis. 2d 712, 729, 295 N.W.2d 753, 762 (Ct. App. 1980).

*By the Court.*—Judgment affirmed.

FOLEY, P.J. *(concurring).*  The decision in this case is much easier than the majority opinion suggests. The court should simply declare that, regardless of whether the employer objects to the marriage, marriage is not a voluntary termination of employment nor misconduct for purposes of denying unemployment compensation benefits. On this basis, there are no disputed material facts, and there is no permissible different view of the evidence as stated in the majority opinion.