THE WEHR STEEL CO., Petitioner-Appellant,

v.

DILHR, Thomas DuCharme, George E. Purifoy and Walter L. Breedlove, Respondents.†

Court of Appeals

*No. 80–1393. Submitted on briefs March 16, 1981.—Decided May 7, 1981.*
(Also reported in 307 N.W.2d 302.)

† Petition to review granted. ABRAHAMSON, J., took no part.

481

482

For the petitioner-appellant the cause was submitted on the briefs of *Marshall R. Berkoff* and *Thomas W. Scrivner* of *Michael, Best & Friedrich* of Milwaukee.

For the respondent Department of Industry, Labor and Human Relations the cause was submitted on the brief of *James L. Pflasterer,* legal staff director, and *Robertamarie Kiley* of the Labor and Industry Review Commission.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J.   The issue in this case is whether the trial court properly found that respondents (claimants) are entitled to receive unemployment compensation benefits after they were suspended for walking off the job without permission.   We reverse the judgment of the trial court and remand this case to the Labor and Industry Review Commission (Commission) for a factual finding of whether a health or safety hazard existed on the

day in question. Such a finding will determine whether the claimants' actions constituted misconduct, which will in turn determine their eligibility for benefits pursuant to sec. 108.04(6), Stats.[1]

The claimants (Thomas DuCharme, George E. Purifoy, and Walter L. Breedlove) were employees at the appellant Wehr Steel Company (Wehr). On July 7, 1978, the claimants and six other Wehr employees walked off their second-shift jobs, claiming that the weather was too hot to work safely. According to the company code of conduct, the approval of either a foreman or the company medical department was required in order for an employee to leave a work department during working hours.[2] The claimants left work without any such approval. On July 10, 1978, the employees who left work on July 7, including the claimants, received a warning from man-

[1] Sec. 108.04(6), Stats.:

Disciplinary Suspension. As to an employe's weeks of unemployment by reason of a disciplinary suspension by a given employer, the employe shall be ineligible for benefits as follows:

(a) If the suspension was for misconduct connected with his employment, he shall be ineligible from the given employer's account for each such week and ineligible from other previous employer accounts for the first 3 such weeks.

(b) If the suspension was for other good cause connected with his employment, he shall be ineligible for the first 3 such weeks.

[2] Wehr had a workers' code of conduct in effect at the time, received by every employee as a pocket part to the union contract, which read in part as follows:

WEHR STEEL COMPANY CODE OF CONDUCT

This code of conduct is intended as a guide for our employees while at work. Disregard of this code will be cause for disciplinary action, the severity depending on the nature of the act.

. . . .

14. Employees must have permission from their foreman to leave their department during working hours. Employees will not be required on excessively hot days to be checked through the Medical Department.

agement which stated that the company did not consider the July 7 temperature of 81 degrees to be too hot to work and that any future departures from work without the proper approval would result in discharge.

On July 19, 1978, the claimants and others threatened to walk out again because of excessive heat. Plant manager Charles Harwell (Harwell) then held a meeting with all of the foundry workers, approximately forty in number. He informed the foundry workers that management did not consider the foundry to be too hot to safely work (the outside temperature was 84 degrees) and also informed the workers that the company had contractual commitments to meet. The employees were told that should the heat become a problem, extra work breaks, along with refreshments and salt tablets, would be made available. Harwell recommended to the workers that they should file grievances with the union if they felt that management was acting unfairly. Finally, he warned that anyone walking off the job would be facing discharge. A union spokesperson also met with the group and advised them to stay on their jobs.

One of the claimants (DuCharme) then went to see the registered nurse on duty in the medical department for permission to leave work. After examining him, she refused to give him the medical excuse needed to leave the plant. Shortly thereafter, the claimants, among others, walked off their jobs and left the plant.

On July 20, 1978, the claimants were among nine employees discharged. Within a week, Wehr and the union worked out an arrangement whereby the discharges would be reduced to disciplinary suspensions. The claimants returned to work on August 17, 1978, without backpay for the period of suspension.

The claimants applied for unemployment compensation under sec. 108.09(1), Stats. A Department of In-

dustry, Labor and Human Relations (Department) deputy made separate initial determinations that the claimants were ineligible for unemployment compensation because they were suspended as a disciplinary action for misconduct connected with their employment.

The claimants appealed the adverse determinations to an appeal tribunal pursuant to sec. 108.09(3), Stats. In separate written decisions, the appeal tribunal affirmed the Department deputy's initial determination.

The claimants then timely appealed the adverse decisions to the Labor and Industry Review Commission (Commission) pursuant to sec. 108.09(6), Stats. The Commission reversed the appeal tribunal in three separate decisions. The decisions were exactly the same with the exception of a one sentence preamble in each decision which outlined the particular worker's history with Wehr.

The crux of the Commission's reversal of the appeal tribunal lies in its conclusions of law:

If an employe in good faith reasonably believes that working conditions present a health or safety hazard to him, the Commission considers that a worker has the right to leave the work place, regardless of company approval. Any subsequent disciplinary suspension imposed by an employer for such conduct would under the circumstances have no effect on the employe's eligibility for unemployment compensation benefits.

The Commission went on to find that there did indeed exist in the mind of each claimant a "good faith belief that working conditions imposed a danger to him." Therefore, the Commission concluded that the claimants' conduct did not constitute misconduct and they were therefore eligible for unemployment compensation benefits.

Wehr timely appealed the Commission decisions to the circuit court pursuant to secs. 108.09(7) and 102.23,

Stats. The circuit court consolidated the actions and affirmed the Commission in a written memorandum decision which was reduced to a judgment, entered July 10, 1980. Wehr appeals from that judgment. We reverse and remand.

The question here is the same as that which the trial court addressed—whether the Commission was correct in concluding that the claimants were not suspended for misconduct or good cause within the meaning of sec. 108.04(6), Stats.

The scope of review of findings of fact made by the Commission in unemployment compensation matters is defined by statute as follows: "The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive."[3]

The test used by the court in reviewing the sufficiency of the evidence to support the findings is whether there is any credible evidence in the record sufficient to support the findings made by the Commission.[4] Under this test, a court upon review will affirm the findings of the Commission if there is any credible evidence to sustain those findings. The fact that the evidence is in conflict is not a sufficient basis for the reversal of the findings of the Commission. Even if the findings are contrary to the great weight and clear preponderance of the evidence, reversal is not commanded because it is not the function of the reviewing court to determine whether the findings that were not made should have been made or could have been sustained by evidence. Rather, the inquiry is whether there is any credible evidence to sustain the findings

---

[3] Sec. 102.23(1), Stats., incorporated by reference into sec. 108.-09(7).

[4] *R. T. Madden, Inc. v. DILHR*, 43 Wis.2d 528, 548, 169 N.W.2d 73, 82 (1969).

that were in fact made.[5] It is the function of the Commission, and not the reviewing court, to determine the credibility of evidence or witnesses and it is for the Commission to weigh the evidence and decide what should be believed.[6]

However, a court is not bound by the Commission's determination of a question of law.[7] Whether a particular course of conduct constitutes misconduct is a question of law.[8] Thus, the Commission's determination that the claimants' conduct was not misconduct is a conclusion of law and is not binding on any appellate court. However, it should be noted that a reviewing court should hesitate to substitute its judgment for that of an agency even on a question of law if a rational basis exists in law for the agency's legal analysis and it does not conflict with the relevant statute's legislative history, prior decisions and constitutional prohibitions.[9] But a reviewing court must set aside or modify agency action, or remand the case, if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action.[10]

The applicable legal standard to be construed in this case is that of "misconduct." The term "misconduct" has been judicially defined to mean:

---

[5] *See Eastex Packaging Co. v. DILHR*, 89 Wis.2d 739, 745, 279 N.W.2d 248, 251 (1979); *Briggs & Stratton Corp. v. DILHR*, 43 Wis.2d 398, 403, 168 N.W.2d 817, 819 (1969); and *Unruh v. Industrial Comm'n*, 8 Wis.2d 394, 398–99, 99 N.W.2d 182, 184 (1959).

[6] *See Eastex Packaging Co.*, supra note 5, at 745, 279 N.W.2d at 251.

[7] *Pabst v. Department of Taxation*, 19 Wis.2d 313, 322, 120 N.W.2d 77, 81 (1963).

[8] *Vocational Tech. & Adult Ed. v. DILHR*, 76 Wis.2d 230, 243, 251 N.W.2d 41, 48 (1977).

[9] *Bucyrus-Erie Co. v. DILHR*, 90 Wis.2d 408, 417, 280 N.W.2d 142, 147 (1979).

[10] Sec. 227.20 (5), Stats.

[C]onduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.[11]

The Commission based its legal conclusion that the claimants' conduct did not fall within the definition of "misconduct" on the finding that the claimants, in good faith, believed working conditions posed a health hazard. Wehr's argument is that the Commission, in so finding, has adopted a subjective test for determining when it is proper to leave a work area because of safety hazards. Wehr argues that such a subjective test would leave work departures entirely up to the good faith whim of an employee.

The subjective test used by the Commission is not the law. Such a good faith test of worker intent would leave to any employee in any business enterprise in Wisconsin the right to determine whether to stay at work or leave, regardless of the employer's legitimate interest in uninterrupted production. Adoption of such a subjective standard could lead to chaos in the working place.

The test of whether a worker has the right to leave the work place without authorization, due to safety and health conditions, is an objective one in which the totality of circumstances are to be considered. The good faith belief of an employee that a safety or health hazard exists is merely one factor to be considered. The finder of fact must base its decision on whether or not a health

[11] *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941).

or safety hazard *actually* exists. This finding can only be based on an analysis of all the facts, and not on an employee's subjective beliefs alone.

The above standard is supported by Wisconsin case law. In *Kohler Co. v. Industrial Commission,*[12] twelve employees sought compensation benefits after walking off their jobs claiming they were ill due to excessive heat. Only one issue was important to the court in determining the eligibility of those claimants for benefits: "The question to be determined by the Commission was whether the men were sick at the time they left the factory or if they were feigning sickness as claimed by the employer."[13]

The totality of circumstances standard is also warranted by the Wisconsin Supreme Court's decision in *Consolidated Construction Co. v. Casey.*[14] The claimant in *Consolidated Construction* was discharged when he wore a beard in violation of a grooming code which the employer justified on safety grounds. Upon review, the supreme court concluded that the administrative determination was deficient because the issue of whether the beard was in fact hazardous was not dealt with. The court reversed and remanded: "[F]or a hearing on the issue of whether or not . . . [the] . . . beard, *under all the facts and circumstances,* would in fact present a hazard sufficient to warrant imposition of the rule and to make failure to comply with it 'misconduct.' " [Emphasis added.][15]

Based on the above authority, the critical determination in this case is whether, under all the facts and circumstances, the heat did in fact constitute a health and safety hazard to the claimants. The Commission made

[12] 272 Wis. 310, 75 N.W.2d 293 (1956).
[13] *Id.* at 321, 75 N.W.2d at 300.
[14] 71 Wis.2d 811, 238 N.W.2d 758 (1976).
[15] *Id.* at 819, 238 N.W.2d at 763.

no determination on this issue. We therefore reverse the judgment of the circuit court and remand to the Commission for the proper finding of fact. Such a finding will determine whether the claimants' actions constituted "misconduct" as defined by *Boynton Cab v. Neubeck.*[16] Only then can a decision regarding the applicability of sec. 108.04 (6), Stats., be properly made.

*By the Court.*—Judgment reversed; case remanded to the Commission.

---

[16] *See* note 11 *supra,* and accompanying text.