Evan A. BARTELT, Appellant,

v.

EMPLOYMENT APPEAL BOARD, Appellee.

No. 92–26.

Supreme Court of Iowa.

Jan. 20, 1993.

Alan M. Daut, Altoona, for appellant.

Joe E. Smith, Employment Appeal Bd., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

HARRIS, Justice.

After a corporation failed, its president and sole stockholder, who had also been a salaried employee, applied for unemployment compensation benefits. The agency ultimately denied them. This appeal is from a district court judgment affirming agency action. We reverse and remand.

The facts are straightforward and not disputed. Evan A. Bartelt, the claimant, was president, sole stockholder, and an employee of Martin's Automatic Service, Inc. (Martin's) from July 1983 until February 15, 1990. As Martin's president, Bartelt filed for bankruptcy under chapter 7 of the United States Bankruptcy Code on February 16, 1990. It was officially a voluntary petition, but Bartelt had no practical choice in the matter. Involuntary bankruptcy was surely only a few days off. The corporation's largest supplier and creditor was poised to seize the majority of the corporation's assets. Bartelt stated that he acted to protect his other creditors.

The following month Bartelt filed for unemployment benefits under Iowa Code chapter 96 (1989) and received them briefly. He was later told by the department of job service that he was not eligible for benefits. Job service reasoned that, because Bartelt was responsible for the corporation's action in petitioning for bankruptcy, he was responsible for his own loss of employment.

Bartelt unsuccessfully pursued the matter to final agency action and was directed to repay the benefits he had received. The district court affirmed the agency on judicial review. The matter is before us on appeal from that affirmance.

■ I. Appellate review of an agency's decision is governed by Iowa Code section 17A.20 (1991). The review is at law and not de novo. *Heatherly v. Iowa Dep't of Job Serv.*, 397 N.W.2d 670 (Iowa 1986).

■ "Unemployed individuals otherwise eligible for unemployment benefits may be disqualified for benefits under Iowa Code section 96.5(1)." *Wills v. Employment Appeal Bd.*, 447 N.W.2d 137, 138 (Iowa 1989). Section 96.5(1) provides that "[a]n individual shall be disqualified for benefits ... [i]f the individual has left work voluntarily without good cause attributable to the individual's employer...." The section does not deny benefits where an individual has left work either (1) involuntarily or (2)

voluntarily with good cause attributable to the individual's employer. *Wills*, 447 N.W.2d at 138.

■ The employer has the burden of proving a claimant is disqualified for benefits. Iowa Code § 96.6(2). We have adopted the Iowa Administrative Code's definition of "voluntary quit." *Wills*, 447 N.W.2d at 138. Iowa Administrative Code rule 345-4.25 (1991) defines "voluntary quit" as follows:

> In general, a voluntary quit means discontinuing the employment because the employee no longer desires to remain in the relationship of an employee with the employer from whom the employee has separated.

■ In *Ames v. Employment Appeal Board*, 439 N.W.2d 669 (Iowa 1989), we "rejected an analysis which disqualifies involuntarily separated employees unless the involuntary leaving is attributable to the employer." *Wills*, 447 N.W.2d at 137. In other words, (1) involuntary leaving can be attributable to someone other than the employer, and (2) when that is the case the employee, if otherwise qualified, can receive unemployment compensation benefits.

■ II. Taking the word "voluntary" in its ordinary meaning, the agency can scarcely be said to have carried its burden of showing a voluntary quit. We understand voluntary to entail a free choice. *See Margoris v. United States R.R. Admin.*, 187 Iowa 605, 608, 174 N.W. 371, 372 (1919) (defining voluntary as "spontaneously, of one's own free will, without being moved, influenced or impelled by others").

There is no doubt that Martin's, the corporation owned by Bartelt, had failed. Its main supplier had undertaken supervision of Martin's retail floor plan and payment plans to such an extent that involuntary bankruptcy was otherwise a near mathematical certainty. Bartelt analogizes his situation to that in *Ames*, where workers volitionally refused to cross picket lines on account of picketers' threats of violence. They nonetheless were allowed to receive unemployment benefits because their un-

employment was determined to be involuntary. *Ames*, 439 N.W.2d at 672–75. According to Bartelt, when an outside force over which neither the employee nor the employer has any control creates the unemployment, the unemployment is involuntary.

The agency relies heavily on *Hanmer v. State*, 92 Wis.2d 90, 284 N.W.2d 587 (1979). In *Hanmer* each of the two claimants was an employee, officer, and fifty percent stockholder of a corporation. There were no other employees. The complainants jointly made decisions affecting the business. On the advice of their attorney, the claimants filed a voluntary petition for bankruptcy. They testified that prior to filing for bankruptcy their creditors continually harassed them and threatened a lawsuit. Bankruptcy schedules listed the corporation's liabilities as $198,562, and assets as $54,466. It was the opinion of their attorney that the claimants had no alternative but to declare bankruptcy. The *Hanmer* court was unimpressed, pointing out that the decision to file for voluntary bankruptcy was carefully considered and deliberate. The court said:

> For us to find a termination for cause under these circumstances would be to hold that an employee could create the very cause for which he is justified in quitting. We decline to do so.

*Id.* at 99, 284 N.W.2d at 591.

We acknowledge that certain policy arguments support the *Hanmer* decision. Although they do not appear in the case before us, facts can easily be imagined in which a person engaged as a proprietor of a private business enterprise could manipulate its failure in such a way as to gain inappropriate protection. Nevertheless, for reasons we shall explain, we are not disposed to follow the *Hanmer* decision under the facts before us.

The flaw we perceive in the agency's position is this. Disqualification is attempted by claiming employment was terminated voluntarily. But voluntariness in the present case is contrary to fact. If unemployment coverage is inappropriate under these circumstances, the remedy is

not to pretend there has been a voluntary quit. The remedy is rather to call for a legislative amendment that would bar coverage for corporate employees such as Bartelt who are also owners and officers of the corporation.

Disqualification from benefits stand or fall on the ground asserted before the agency. *Larson v. Employment Appeal Bd.*, 474 N.W.2d 570, 572 (Iowa 1991). Whatever else might be asserted against allowing Bartelt the benefits he seeks, it has not been established that he voluntarily quit. Nor, we emphasize, was there any indication that Bartelt manipulated Martin's corporate affairs just to gain unemployment benefits. Because a voluntary quit was the basis for Bartelt's disqualification, the judgment of the district court must be reversed and the case remanded for entry of judgment accordingly.

REVERSED AND REMANDED.