#25851-a-GAS

**2012 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MICHAEL MANUEL,                                          Claimant and Appellant,

    v.

TONER PLUS, INC.,                                        Employer,
  and
SOUTH DAKOTA DEPARTMENT OF
LABOR, UNEMPLOYMENT
INSURANCE DIVISION,                                      Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WILLIAM J. SRSTKA, JR.
Judge

* * * *

DEREK A. NELSEN of
Fuller & Sabers, LLP
Sioux Falls, South Dakota
  and
JONATHAN K. VAN PATTEN
Vermillion, South Dakota,                                Attorneys for appellant.

ROBERT B. ANDERSON of
May, Adam, Gerdes and Thompson, LLP
  and
AARON N. ARNOLD
Department of Labor
Pierre, South Dakota                                     Attorneys for appellee,
                                                         SD Department of Labor.

* * * *

ARGUED MARCH 19, 2012

OPINION FILED **06/13/12**

#25851

SEVERSON, Justice

[¶1.]        Michael Manuel, the sole owner of Toner Plus, Inc., closed his business on May 30, 2009.  Manuel then filed a personal claim for unemployment compensation benefits.  The South Dakota Department of Labor (Department) determined Manuel was ineligible to receive unemployment compensation benefits because he "voluntarily" dissolved his business and did not have "good cause" for doing so under SDCL 61-6-13 to -13.1.  The circuit court affirmed the Department's decision.  Manuel appeals.  We affirm.

BACKGROUND

[¶2.]        Toner Plus was primarily in the business of selling toner and ink cartridges for printers to local businesses.  Manuel was the president and sole stockholder of Toner Plus.  He was also an employee of the company.  Toner Plus made payments to the South Dakota unemployment compensation fund based on Manuel's status as a covered employee.

[¶3.]        Manuel decided to close Toner Plus on May 30, 2009.  He then filed a claim for unemployment compensation benefits with the Department.  After an administrative law judge dismissed his claim in July of 2009, Manuel appealed the decision to the Secretary of Labor (Secretary).  The Secretary adopted the administrative law judge's order of dismissal.

[¶4.]        Manual appealed the Secretary's decision to the circuit court.  The circuit court remanded the case back to the Department for a hearing on the merits, which was held in May of 2010.  During this hearing, Manuel testified that he decided to close his business because sales for ink cartridges had declined over

- 1 -

the years due to technological advances. He explained that many new products such as printers, fax machines, and copiers are connected to the internet when they are installed. When the machine is low on ink or toner, a notification is sent to the supplier. The supplier then automatically sends replacement ink or toner. Manuel testified that this technological advancement made it difficult for Toner Plus to compete with national suppliers and caused the company's profits to steadily decline.

[¶5.]     Manuel testified that the company doubled its advertising in an attempt to generate new business. Steps were also taken to reduce expenses. In 2007, Manuel put $35,000 into the business. Despite these efforts, Toner Plus continued to struggle financially. Manuel considered other means of generating profit. For example, he considered opening a center to service machines. However, after considering the costs associated with opening a service center and training new technicians, Manuel determined this was not a feasible option. He ultimately decided to close Toner Plus to avoid incurring further losses.

[¶6.]     In his findings of fact, the administrative law judge acknowledged that Manuel decided to close Toner Plus because of "industry trends," but ultimately found that Manuel was ineligible to receive unemployment compensation benefits. In making this finding, the administrative law judge noted that unemployed individuals who are otherwise eligible for unemployment compensation benefits may be disqualified from receiving benefits under SDCL 61-6-13 if they "voluntarily" leave their employment and do not have "good cause" for doing so.

[¶7.]     The administrative law judge determined that Manuel "voluntarily" closed Toner Plus and that his reasons for doing so did not constitute "good cause," as the term is defined under SDCL 61-6-13.1.  The circuit court affirmed the ruling of the administrative law judge.

## STANDARD OF REVIEW

[¶8.]     SDCL 1-26-36 sets forth the standard of review for administrative appeals.  The statute "requir[es] us to give great weight to the findings of the agency and reverse only when those findings are clearly erroneous in light of the entire record." *Williams v. S.D. Dept. of Agric.,* 2010 S.D. 19, ¶ 5, 779 N.W.2d 397, 400.  However, questions of law are reviewed de novo.  *Id.* (citing *Vollmer v. Wal-Mart Store, Inc.,* 2007 S.D. 25, ¶ 12, 729 N.W.2d 377, 382).  "Mixed questions of law and fact require further analysis."  *Darling v. W. River Masonry, Inc.,* 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366 (quoting *McNeil v. Superior Siding, Inc.,* 2009 S.D. 68, ¶ 6, 771 N.W.2d 345, 347).  We have explained,

> If application of the rule of law to the facts requires an inquiry that is "essentially factual"–one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct"–the concerns of judicial administration will favor the [circuit] court, and the [circuit] court's determination should be classified as one of fact reviewable under the clearly erroneous standard.  If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*Id.* (quoting *McNeil,* 2009 S.D. 68, ¶ 6, 771 N.W.2d at 347-48).  This case primarily involves the exercise of judgment about legal principles and, thus, our review of the mixed question is de novo.

## DISCUSSION

[¶9.] "Entitlement to unemployment compensation benefits is governed entirely by statute." *In re Adams*, 329 N.W.2d 882, 884 (S.D. 1983) (citing *Red Bird v. Meierhenry*, 314 N.W.2d 95, 96 (S.D. 1982)). We have stated that "unemployment compensation statutes should be liberally construed in favor of the claimant to afford all the relief the legislature intended to grant." *Red Bird*, 314 N.W.2d at 96. But we have cautioned that "courts may not exceed the limits of the statutory intent. A court is not at liberty to read into the statute provisions which the legislature did not incorporate, or enlarge the scope of the statute by an unwarranted interpretation of its language." *Id.* at 96-97 (citations omitted). In this case, the Department has the burden of proving that Manuel is ineligible to receive unemployment compensation benefits. *See Habben v. G.F. Buche Co., Inc.*, 2004 S.D. 29, ¶ 8, 677 N.W.2d 227, 230 (noting that in an unemployment compensation case, the employer has the burden of proving an employee is not eligible to collect benefits).

[¶10.] **Whether Manuel's decision to terminate his employment with Toner Plus was voluntarily.**

[¶11.] In South Dakota, in order to recover unemployment compensation benefits, a claimant must be in an employment relationship with his or her employer. Under SDCL 61-1-10(1), "employment" is defined to include services performed by "any officer of a corporation . . . ." The Department concedes that, under SDCL 61-1-10(1), Manuel was employed by Toner Plus. The Department also concedes that a person who controls a business is not automatically disqualified from receiving unemployment compensation benefits in South Dakota.

Nevertheless, the Department argues that the administrative law judge was correct in finding Manuel was disqualified from receiving unemployment compensation benefits because, under SDCL 61-6-13, Manuel's decision to terminate his employment with Toner Plus was voluntary. SDCL 61-6-13 provides, in part:

> An unemployed individual who, *voluntarily* without good cause, left the most recent employment of an employer or employing unit, after employment lasting at least thirty calendar days is denied benefits until the individual has been reemployed at least six calendar weeks in insured employment during the individual's current benefit year and has earned wages of not less than the individual's weekly benefit amount in each of those six weeks.

(Emphasis added.)

[¶12.]     Although Manuel agrees that he made the decision to close Toner Plus of his own volition, he argues that the losses Toner Plus was incurring as a result of industry changes compelled him to close the business in order to avoid incurring further losses. Manuel describes his decision to close Toner Plus as "a choice between two bad alternatives," which he argues "cannot be fairly characterized as a 'voluntary quit.'" Manuel's argument raises a question of statutory interpretation that this Court reviews under the de novo standard. *See Williams,* 2010 S.D. 19, ¶ 5, 779 N.W.2d at 400 (citing *Vollmer,* 2007 S.D. 25, ¶ 12, 729 N.W.2d at 382).

[¶13.]     Manuel cites *Bartelt v. Employment Appeal Board* in support of his argument that his decision to close Toner Plus was involuntary. *See* 494 N.W.2d 684 (Iowa 1993). In *Bartelt,* the sole stockholder, president, and employee of a corporation applied for unemployment compensation benefits after filing for

voluntary bankruptcy on behalf of the corporation. *Id*. at 685. In determining whether the claimant could collect unemployment benefits, the court construed an Iowa statute denying benefits to individuals who have left work "voluntarily without good cause attributable to the individual's employer . . . ." *Id*. The court held that the "near mathematical certainty" that the corporation would be forced into involuntary bankruptcy within "a few days" compelled the conclusion that the claimant's decision to leave his employment was involuntary. *Id*. at 685-86. The court reasoned, "Taking the word 'voluntary' in its ordinary meaning, the agency can scarcely be said to have carried its burden of showing a voluntary quit. We understand voluntary to entail a free choice." *Id*. at 686 (citation omitted).

[¶14.]  Other courts have applied a more restrictive definition of the term "voluntary." For example, in *Hanmer v. Wisconsin, Department of Industry, Labor & Human Relations*, the claimants, who were employees, stockholders, and officers of a business, attempted to collect unemployment compensation benefits after filing for voluntary bankruptcy on behalf of the business. 284 N.W.2d 587, 588 (Wis. 1979). The claimants testified that "just prior to their decision to file for bankruptcy[,] they were being continually harassed by creditors and threatened with law suits." *Id*. The Department of Labor nonetheless determined that the claimants were ineligible to collect unemployment compensation benefits, and the circuit court affirmed this determination. *Id*.

[¶15.]  On appeal, the Wisconsin Supreme Court acknowledged that the claimants were "amply justified in [their] decision to terminate [their] employment]." *Id*. at 589. But court went on to declare, "In determining whether

- 6 -

an employee voluntarily terminated his employment, . . . whatever justification he may have had for doing so is not relevant. The initial question is not why the employee terminated his employment, but whether he in fact did so." *Id.* The court concluded:

> [The claimants'] decision to file for bankruptcy did not spring from accident or impulse. It was the result of a deliberate process in which appellants sat down with their attorney and carefully considered their alternatives. After thoughtful analysis they arrived at the conclusion that bankruptcy was inevitable. They then decided to file a [v]oluntary petition for bankruptcy. A decision reached in this manner is not involuntary.

*Id.*

[¶16.] In *Director, Department of Industrial Relations, Alabama v. Ford*, the Court of Civil Appeals of Alabama applied a similar definition of "voluntary" to hold that a claimant, who was the president, employee, and sole stockholder of a corporation, was not entitled to recover unemployment compensation benefits after he closed his business. 700 So.2d 1388, 1390 (Ala. Civ. App. 1997). The court reached this holding despite the claimant's testimony that he decided to close his business "to prevent further losses and because he knew that the bank would soon foreclose." *Id.* The court noted that "[t]he word 'voluntary' implies the making of a decision by one's own accord or choice." *Id.* Because the claimant made the decision to close his business, the court held that he did so voluntarily, "even though an involuntary closing of the business would probably have occurred soon." *Id.*

[¶17.] Although these cases provide some guidance to us in determining the meaning of the term "voluntary" under SDCL 61-6-13, they are not controlling. *See*

*Red Bird*, 314 N.W.2d at 96 (recognizing that unemployment compensation benefits are "creatures of statute" and, therefore, decisions from other jurisdictions are not controlling). We must interpret South Dakota's Unemployment Compensation Act as a whole in order to determine the legislative intent behind SDCL 61-6-13. In *John Morrell & Company v. Unemployment Compensation Commission*, this Court examined the meaning of the term "voluntary" under South Dakota's Unemployment Compensation Act. 69 S.D. 618, 13 N.W.2d 498 (1944). In that case, the "claimant's physical condition, due to pregnancy, was such that continuing to work endangered her health, and the separation was necessitated by her approaching confinement." *Id*. at 499. The issue before this Court was whether the claimant voluntarily left her employment and was thus barred from receiving unemployment compensation benefits. In addressing this issue, we stated,

> [I]t is apparent that claimant left her employment of her own volition and was not discharged. . . . We agree that claimant was justified in leaving her employment, but it does not follow that she was entitled to unemployment benefits. It appears to us from a consideration of the [Unemployment Compensation Act] that the legislature did not intend that employees who leave their work for reasons not attributable to or connected with their employment should receive benefit payments. Without giving the word "voluntarily" . . . an exact definition, we think that it would do violence to the intent and purpose of the statute to hold under the facts in this case that claimant did not "voluntarily" leave her employment.

*Id*. at 500.

[¶18.]     In *Red Bird*, this Court again addressed the meaning of the term "voluntary" under South Dakota's Unemployment Compensation Act. In *Red Bird*,

the claimant quit her employment for personal reasons. 314 N.W.2d at 97. In holding that the claimant voluntarily left her employment, this Court stated,

> Appellant's decision to quit may very well have been an involuntary act in the sense that it was brought about by forces beyond her control. Nevertheless, our consideration of the whole act, including its declaration of policy and amendment history, . . . leads to the conclusion that the term "voluntarily without good cause" means a cause essentially not attributable to the employer or the employment. A purpose to maintain that concept is implicit in the SDCL 61-6-13.1 restrictions of "good cause" for voluntarily leaving employment. We believe the SDCL 61-6-13.1 addition was enacted to more clearly define and express that intention.

*Id.*

[¶19.]     This Court has not previously considered whether a business owner's decision to close his or her business for economic reasons constitutes a "voluntary" termination of employment under SDCL 61-6-13. However, after considering the South Dakota Unemployment Compensation Act as a whole, we think it would be contrary to the intent and purpose of SDCL 61-6-13 to hold that Manuel did not "voluntarily" leave his employment with Toner Plus. It is undisputed that Manuel made the decision to close Toner Plus of his own volition after carefully considering market conditions and industry trends. Manuel testified that he considered alternative ways to try to make Toner Plus profitable, but ultimately decided the most reasonable option was to close the business. While Manuel took the course of action that he found was the most reasonable, he was not compelled to close Toner Plus. *See Hanmer,* 284 N.W.2d at 589 ("The fact that one particular alternative is recognized as by far the most reasonable course of action does not mean that one is not free to choose another."). Accordingly, after reviewing the entire record, we

hold that the administrative law judge did not err in finding that the Department met its burden of showing Manuel's decision to close Toner Plus was voluntary.

[¶20.]    It is important to note that a claimant who voluntarily terminates his or her employment may still recover unemployment compensation benefits if the claimant can show that he or she had "good cause" for doing so. SDCL 61-6-13.1. Courts in other jurisdictions have held that a business owner who closes his or her business for economic reasons has "good cause" for voluntarily terminating his or her employment, thus entitling the business owner to collect unemployment compensation benefits. *See e.g. Ford,* 700 So.2d 1388 (economic forces constituted good cause for claimant to close his business and terminate his employment); *Carlsen v. Unemployment Ins. Appeals Bd.,* 134 Cal. Rptr. 581 (Cal. Ct. App. 1976) (finding that a corporate president was not ineligible for unemployment compensation benefits because he had good cause for electing not to compensate himself). However, in South Dakota, the Legislature has specifically enumerated the circumstances constituting "good cause" for voluntarily leaving employment. At the time of the administrative hearing on Manuel's claim, SDCL 61-6-13.1 provided, in pertinent part:

> "Good cause" for voluntarily leaving employment is restricted to leaving employment because:
> (1) Continued employment presents a hazard to the employee's health. . . .
> (2) The employer required the employee to relocate the employee's residence to hold the employee's job;
> (3) The employer's conduct demonstrates a substantial disregard of the standards of behavior that the employee has a right to expect of an employer or the employer has breached or substantially altered the contract for employment;

> (4) An individual accepted employment while on lay off and subsequently quit the employment to return to work for the individual's regular employer; or
> (5) The employee's religious belief mandates it. . . .
> (6) Leaving is necessary to protect the individual from domestic abuse. . . .

[¶21.]    The administrative law judge found that Manuel's decision to close Toner Plus for financial reasons did not fit within any of the circumstances enumerated in SDCL 61-6-13.1.  Manuel does not challenge the administrative law judge's finding on this issue.  Thus, we need not address whether Manuel had "good cause" for voluntarily terminating his employment with Toner Plus.

[¶22.]    Affirmed.

[¶23.]    GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and AMUNDSON, Retired Justice, concur.

[¶24.]    AMUNDSON, Retired Justice, sitting for WILBUR, Justice, disqualified.