#26434-a-DG
**2013 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
APPEAL OF JENNY EASTON,                        Claimant and Appellee,

v.

HANSON SCHOOL DISTRICT 30-1,         Employer and Appellant,

and

SOUTH DAKOTA DEPARTMENT OF LABOR
AND REGULATION, UNEMPLOYMENT
INSURANCE DIVISION,                     Agency and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HANSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SEAN M. O'BRIEN
Retired Judge
* * * *

CHRIS A. NIPE of
Larson & Nipe
Mitchell, South Dakota             Attorneys for claimant
                                 and appellee.

THOMAS H. HARMON
Pierre, South Dakota               Attorney for employer
                                 and appellant.

AMBER L. MULDER of
South Dakota Department of
  Labor and Regulation
  Unemployment Insurance Division
Pierre, South Dakota               Attorneys for agency
                                 and appellee.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 12, 2013
OPINION FILED **04/03/13**

GILBERTSON, Chief Justice

[¶1.]        Jenny Easton was employed as a music teacher by the Hanson School

District (the District).  In March 2011, Easton received notice that the District was

replacing her full-time position with a part-time position.  The part-time position

would consist of 75 percent of the time of Easton's full-time position, and would

include a 25 percent reduction in pay.  The District offered Easton the part-time

position, which she rejected.  In September 2011, Easton filed a claim for

unemployment benefits.  An administrative law judge (ALJ) affirmed the initial

determination of the South Dakota Department of Labor and Regulation,

Unemployment Insurance Division (the Division), which concluded that Easton was

eligible to receive unemployment benefits.  However, the Secretary of the

Department of Labor (the Secretary) reversed the ALJ's determination, finding that

Easton was not eligible to receive unemployment benefits.  The circuit court

reversed the Secretary's decision based on its determination that the part-time

position was not "suitable" employment and that Easton had "good cause" to reject

the offer.  The District appeals.

## FACTS

[¶2.]        Easton began working for the District in 2004 as a full-time music

teacher.  During the 2010-2011 school year, Easton was paid $29,300, plus $960 for

performing extracurricular duties.  On March 16, 2011, the District notified Easton

that her position was being eliminated pursuant to SDCL 13-43-6.4, which allows

for the nonrenewal of a teacher's contract due to a reduction in staff.  Easton was

informed that the District planned to replace her full-time position with a part-time

position that would consist of 75 percent of the time of Easton's full-time position, and that would not include co-curricular or extracurricular responsibilities. Additionally, the new position would include a 25 percent reduction in pay, decreased sick/vacation leave, and a reduction in retirement contributions. Easton was told that the District Superintendent would recommend her for the part-time position, but that the final employment decision would be made by the District's school board. The District offered Easton the new position (with a base salary of $21,975) on April 6, 2011.

[¶3.] On April 21, 2011, Easton provided the District's administrators and school board with formal notice that she would not accept the part-time position. In her letter to the District's administrators and school board, Easton expressed concern that the constraints of the new position would compromise her academic integrity, the new position would be a disservice to students, there would not be enough time for planning, and the reduction of job duties for the new position would be minimal. Easton later clarified that the 25 percent reduction in pay was the main reason she chose not to accept the new position. Further, Easton indicated she believed the part-time position would prevent her from seeking full-time employment elsewhere.

[¶4.] On September 2, 2011, Easton filed a claim for unemployment benefits. The Division determined Easton was entitled to receive unemployment benefits commencing on August 28, 2011. The District appealed this determination. An ALJ conducted a telephonic hearing on October 21, 2011, and affirmed the Division's decision. Upon consideration of the factors listed in SDCL 61-6-17

regarding the suitability of offered employment, the ALJ determined the part-time position was not "suitable" work. Further, the ALJ determined Easton had "good cause" to reject the new position pursuant to SDCL 61-6-16.[1] On November 9, 2011, the District appealed the ALJ's decision to the Secretary. The Secretary reversed the ALJ's decision. Although the Secretary recognized that the 25 percent reduction in pay was significant, the Secretary determined Easton was not eligible to receive unemployment benefits because the part-time position was suitable and Easton did not have good cause to reject the new position.

[¶5.]     Easton appealed the Secretary's decision to the circuit court on January 10, 2012. On June 29, 2012, the circuit court entered an order reversing the Secretary's decision. The circuit court determined the part-time position was not suitable work. Alternatively, the circuit court determined that the 25 percent reduction in pay gave Easton good cause to reject the new position. As a result, the circuit court concluded Easton was eligible to receive unemployment benefits as of August 28, 2011. The District appeals.

## ANALYSIS AND DECISION

[¶6.]     **Whether the 25 percent reduction in pay made the new position unsuitable and/or gave Easton good cause to reject the new position.**

---

1.     The current version of SDCL 61-6-17 was formerly designated SDCL 61-6-16, and the current version of SDCL 61-6-16 was formerly designated SDCL 61-6-15. *See* 2012 S.D. Sess. Laws 591, ch. 252, § 59 (authorizing the code counsel to reorganize SDCL chapter 61-6, entitled "Unemployment Benefits"). The text of these sections was not changed as a result of the reorganization. Thus, for purposes of this appeal, all references will be made to the current versions of these statutes.

[¶7.] The standard of review for administrative appeals is set forth in SDCL 1-26-36. *Manuel v. Toner Plus, Inc.*, 2012 S.D. 47, ¶ 8, 815 N.W.2d 668, 670. According to SDCL 1-26-36, reviewing courts are required to "give great weight to the findings made and inferences drawn by the agency on questions of fact." "However, questions of law are reviewed de novo." *Manuel*, 2012 S.D. 47, ¶ 8, 815 N.W.2d at 670 (citing *Vollmer v. Wal-Mart Store, Inc.*, 2007 S.D. 25, ¶ 12, 729 N.W.2d 377, 382). "Mixed questions of law and fact require further analysis." *Id.* (quoting *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366). "If . . . the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then . . . the question should be classified as one of law and reviewed de novo." *Id.* This Court has previously recognized that "[t]he issues of job suitability and good cause are ones of law and subject to our review." *Reetz v. Lutheran Health Sys.*, 2000 S.D. 74, ¶ 14, 611 N.W.2d 230, 235, *overruled on other grounds by Wells v. Howe Heating & Plumbing, Inc.*, 2004 S.D. 37, 677 N.W.2d 586 (quoting *Gettig Eng'g v. Com., Unemp. Comp. Bd.*, 473 A.2d 749, 752 (Pa. Commw. Ct. 1984)). In this case we address the issue of whether the part-time position Easton was offered by the District was suitable and/or whether Easton had good cause to reject the part-time position. Thus, as this case involves questions of law, our review is de novo.

[¶8.] "Entitlement to unemployment compensation benefits is governed entirely by statute." *Manuel*, 2012 S.D. 47, ¶ 9, 815 N.W.2d at 670 (quoting *In re Adams*, 329 N.W.2d 882, 884 (S.D. 1983)). With regard to eligibility for unemployment benefits, SDCL 61-6-16 provides:

> If the Department of Labor and Regulation finds that an unemployed individual has failed, *without good cause*, either to apply for available suitable work when so directed by the department or to accept *suitable* work when offered to the individual, the claimant shall be denied benefits, including extended benefits, until the individual has been reemployed at least six calendar weeks in insured employment during the individual's current benefit year and earned wages of not less than the individual's weekly benefit amount in each of those six weeks. The department may promulgate rules pursuant to chapter 1-26 for determining suitable work.

(Emphasis added.) Therefore, under SDCL 61-6-16, an individual will be denied unemployment benefits if the individual rejects a suitable offer of employment without good cause.[2] *See also Reetz*, 2000 S.D. 74, ¶ 9, 611 N.W.2d at 233.

[¶9.] In *Reetz v. Lutheran Health Systems*, this Court explained that "[t]he standards implemented by various courts for determining the existence of 'good cause' for refusing work are fairly uniform." 2000 S.D. 74, ¶ 13, 611 N.W.2d at 234. In determining whether the claimant in *Reetz* had good cause to reject the offer of employment, this Court applied the following standard set forth by the Pennsylvania Commonwealth Court in *Gettig Engineering v. Commonwealth of*

---

2. SDCL 61-6-17 provides a list of factors to be considered in determining the suitability of offered employment. According to SDCL 61-6-17:

> In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness and prior training, the individual's experience and *prior earnings*, the individual's length of unemployment and prospects for securing local work in the individual's customary occupation, and the distance of the available work from the individual's residence.

(Emphasis added.) The sole consideration in this case is whether the 25 percent reduction in pay made the new position unsuitable and/or gave Easton good cause to refuse to accept the new position. For purposes of this appeal, the analysis of the suitability of the new position and whether Easton had good cause to reject the new position are synonymous.

*Pennsylvania, Unemployment Compensation Board of Review*, 473 A.2d 749, 752 (Pa. Commw. Ct. 1984): "[i]n resolving the issue of whether Claimant had good cause to refuse work, the Claimant must prove that she acted reasonably and in good faith and that she had substantial reasons for refusing the employment." *Id.* ¶ 14, 611 N.W.2d at 235. Other courts have recognized that a significant reduction in pay constitutes "good cause" to refuse an offer of employment, or to leave employment, depending on the circumstances.[3] *See Bunny's Waffle Shop v. Cal. Emp't Comm'n*, 151 P.2d 224 (Cal. 1944) (concluding that the 25 percent wage cut gave employees good cause to leave work); *Keystone Steel & Wire Div., Keystone Consol. Indus. v. Ill. Dep't of Labor*, 346 N.E.2d 399 (Ill. App. Ct. 1976) (determining that employees, whose employer offered them jobs that were inferior to their prior positions and included pay reductions of 30-47 percent, had good cause to reject the offers and leave their employment); *Scott v. Photo Ctr., Inc.*, 235 N.W.2d 616 (Minn. 1975) (determining that the 25 percent reduction in employee's pay, which was attributable to employer's new method of calculating wages, was substantial, and that employee had good cause to leave work); *Johns-Manville Prods. Corp. v. Bd. of Review, Div. of Labor and Indus.*, 300 A.2d 572 (N.J. Super. Ct. App. Div. 1973) (concluding that the 22-25 percent reduction in wages associated with the offered positions was substantial, and that employee had good cause to reject the offered positions and leave work).

---

3.     As was noted in *Reetz*, although there are differences between cases "written in the context of good cause for voluntarily quitting employment" and cases written in the context of "good cause for refusing employment, there is a nexus between the[ ] two standards." 2000 S.D. 74, ¶ 16, 611 N.W.2d at 235.

[¶10.]     Under the circumstances of this case, we conclude Easton acted reasonably and in good faith when she decided to reject the part-time position she was offered by the District.  Further, we conclude that the 25 percent reduction in pay constitutes a substantial reason for refusing to accept the part-time position.  If Easton would have accepted the new position, her base salary would have been reduced from $29,300 to $21,975 (which is a reduction of $7,325).  At Easton's level of income, a 25 percent reduction in salary is significant (which even the Secretary acknowledged), and would likely have a substantial effect on Easton's lifestyle.  As a result, we conclude Easton had good cause to reject the part-time position.

[¶11.]     The District argues this case is factually similar to *Reetz* and that this Court's decision in *Reetz* should control the outcome of this case, resulting in a denial of Easton's claim for unemployment benefits.  However, although the facts of this case share some similarities to the facts in *Reetz*, *Reetz* is distinguishable on the critical issue of compensation.  In *Reetz*, the claimant had been working at a nursing home for 25 years.  2000 S.D. 74, ¶ 2, 611 N.W.2d at 231.  In March 1998, the claimant was informed that her job was being eliminated due to a restructuring of the company.  *Id.* ¶ 3, 611 N.W.2d at 231.  The claimant was given applications for comparable positions within the nursing home, and was told she could apply.  *Id.*

[¶12.]     Before submitting any applications, the claimant discovered an e-mail the claimant believed indicated that she would not be hired for the available positions.  *Id.* ¶¶ 3-4, 611 N.W.2d at 232.  The claimant was seriously offended by the e-mail, and did not apply for any positions.  *Id.* ¶¶ 4-5, 611 N.W.2d at 232.  The claimant then sent an administrator a letter requesting severance pay.  *Id.* ¶ 5, 611

N.W.2d at 232. In response, the claimant received a letter denying her request. *Id.* Nevertheless, the nursing home offered the claimant a new position despite her failure to apply. *Id.* ¶ 6, 611 N.W.2d at 232. According to the terms of the new position, the claimant would work four days per week,[4] receive her current rate of pay, and remain eligible for performance bonuses. *Id.* ¶ 6, 611 N.W.2d at 232-33. However, the claimant would not be eligible for increases in her rate of pay because she was already at the maximum pay rate for that position. *Id.* The claimant rejected the offer of employment and filed a claim for unemployment benefits. *Id.* ¶ 7, 611 N.W.2d at 233.

[¶13.] On appeal, this Court concluded the case should be reviewed as a "refusal of suitable work [without good cause]" case pursuant to SDCL 61-6-16. *Id.* ¶ 12, 611 N.W.2d at 234. Ultimately, this Court concluded the claimant was not eligible for unemployment benefits. *Id.* ¶ 19, 611 N.W.2d at 236. This Court determined the claimant did not have good cause to refuse the offer of employment. *Id.* ¶ 15, 611 N.W.2d at 235. Specifically, this Court noted that the claimant did not demonstrate or even assert the position she was offered was not suitable. *Id.* Additionally, this Court pointed out that the nursing home "made every effort to accommodate [the claimant] in terms of wages, hours and acceptable schedule . . . [which] calls into question the reasonableness of [the claimant's] actions." *Id.* In reaching its conclusion, this Court rejected the claimant's assertion that the e-mail

---

4.     In *Reetz*, there is no indication as to how many days per week the claimant previously worked in the position that was eliminated.

she discovered gave her good cause to refuse to accept the offer of employment.[5] *Id.* ¶ 16, 611 N.W.2d at 235.

[¶14.]     Unlike in *Reetz*, where the position offered included the same rate of pay, in this case the position Easton was offered by the District included a 25 percent reduction in pay.  Further, unlike in *Reetz*, in this case, Easton consistently asserted the new position was not suitable.  Thus, due to the factual differences, *Reetz* does not control our disposition of this case.

[¶15.]     Under the circumstances of this case, we conclude Easton is eligible for unemployment benefits because the 25 percent pay reduction made the part-time position unsuitable and gave Easton good cause to reject the new position.  As a result, the circuit court did not err in reversing Secretary's determination that Easton was ineligible for unemployment benefits.  Therefore, we affirm.

[¶16.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.

---

5.     It appears as though the only basis for the claimant's assertion that she had "good cause" to reject the position was the offensive nature of the email, which led the claimant to believe the nursing home was trying to "get rid of [her]." *Id.* ¶ 4, 611 N.W.2d at 232.